UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH LONGTIN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 06-1302 JMF |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF JUSTICE, <u>et</u> <u>al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
<u>TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER</u>

Defendants hereby submit this opposition to plaintiff's Motion For Temporary Restraining Order ("Plaintiff's Motion").

<u>INTRODUCTION</u>

As reflected herein, Plaintiff has failed to establish any likelihood of success on the merits of his claim and has otherwise failed to establish that emergency relief should be awarded, particularly where that relief would, in effect, be permanent in nature.  Plaintiff's request for a deposition of Assistant United States Attorney Elisabeth Poteat should be denied, because the decision to deny Plaintiff's request for deposition testimony under Department of Justice regulations properly considered the relevant factors and articulated a rational connection between the facts found and the choice made, and Plaintiff has not established that the decision was arbitrary or capricious.  Plaintiff's request for trial testimony fails because he has not exhausted administrative remedies for such a

request for trial testimony, and could not show that the Maryland Courts would have jurisdiction to compel testimony from a person in another jurisdiction.[1]

ARGUMENT

As the Court of Appeals has explained, in considering a plaintiff's request for preliminary relief:

> a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest.

Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 303 (D.C. Cir. 2001); see also Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1505-06 (D.C. Cir. 1995); NTEU v. United States, 927 F.2d 1253, 1254 (D.C. Cir. 1991); Randolph-Sheppard Vendors v.

---

[1] Plaintiffs have delivered a document purporting to be a subpoena issued by the Maryland Court calling for Ms. Poteat's testimony at a trial in Maryland. The document was delivered to the Office of the United States Attorney in the District of Columbia ("USAO") without any indication that there exists authority for that Court to exercise its jurisdiction extraterritorially. Minder v. Georgia, 183 U.S. 559, 561 (1902) ("the court has at its command no compulsory process which could be used to enforce the attendance of the witnesses from beyond its jurisdiction" and had the Georgia court sent an officer into Alabama and served the witnesses personally with subpoenas, the citizen of the other state would have a right to ignore the command of the court thus transmitted to him); Dillingham v. Kentucky, 995 S.W.2d 377, 382 (Ky. 1999) (Generally, a state has no power to subpoena witnesses over which it has no jurisdiction); City of Sun Prairie v. Davis, 226 Wis. 2d 738, 595 N.W.2d 635 (1999)(A municipal judge does not have the statutory authority to authorize the subpoena of an out-of-state witness).

Weinberger, 795 F.2d 90, 110 (D.C. Cir. 1986); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977); Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958).  Plaintiff cannot meet the heavy burden for obtaining emergency injunctive relief.  "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).

> In addition, the following types of preliminary injunctions are disfavored and they require that the movant satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction may be issued: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.

Id. at 1098-99.  The injunctive relief Plaintiff seeks falls into each of these categories.  It would disturb the status quo, and it would mandate that the Department of Justice release information from its systems of records without authority, and that release could never be undone.  Thus, Plaintiff bears an unusually heavy burden.  See id.

Plaintiff has not met the exacting requirements for the requested injunctive relief.  First, he has no likelihood of success on the merits.  Second, plaintiff will not suffer

-3-

irreparable injury if an injunction is not granted.  Third, the grant of a preliminary injunction would substantially compromise the privacy interests that Congress has seen fit to protect under the Privacy Act.  Fourth, the injunction plaintiff seeks would not further the public interest, but would be simply cumulative of the evidence that Plaintiff already possesses.

Plaintiff's request for preliminary relief is, thus, inappropriate and should be denied.

I.   PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.

Plaintiff's proposed order identifies the emergency relief which he seeks on a preliminary basis as follows:

> That Assistant United States Attorney Elisa Poteat be and hereby is to appear for deposition *ad Testificandum* at a time and place that is mutually convenient to the parties but in any event, said deposition shall take place on or before Tuesday, August 1, 2006; and . . . . that Assistant United States Attorney Elisa Poteat be and hereby is to appear for trial in the case of *Longtin v. Prince George's County, et al.*, Circuit Court for Prince George's County, Maryland, Case No.: CAL 01-23689.

Plaintiff's Proposed Order at 1-2.  The deposition should not proceed, because Plaintiff cannot establish that Defendants' Touhy[2] determination was arbitrary or capricious; and the trial testimony should not proceed, because Plaintiff has not exhausted his administrative remedies under those regulations for trial testimony, see McKart v. United States, 395 U.S. 185, 193-195

_____

[2]   See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).

-4-

(1969), and Plaintiff has offered no basis upon which to suggest that the Maryland County Court has jurisdiction to issue a subpoena in a civil case outside of Maryland's borders.

The Court of Appeals has made clear that neither the District of Columbia Superior Court nor this Court has the jurisdiction directly to enforce a Superior Court subpoena when the party seeking enforcement has failed to secure authorization under an agency's Touhy regulations.  "In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena."  Houston Business Journal v. OCC, 86 F.3d 1208, 1211 (D.C. Cir. 1996).  And, "because a federal court's jurisdiction upon removal is derivative of the state court's, the federal court in a removed action is also barred from enforcing a subpoena against the federal government." Id. at 1212.  Although Houston Business Journal involved only a subpoena for documents, the decision also addressed situations involving subpoenas for testimony.[3]  "Under Touhy," stated the Court, "neither state-court nor federal-court litigants may

---

[3]  None of the boxes on either subpoena is checked, but each was accompanied by a notice listing 5 enumerated categories of "Documents To Be Produced".  See Plaintiff's Exhibit 2. Moreover, although the notice accompanying the Custodian Of Records subpoena indicated that it could be satisfied through the production of the records and an executed certification of records custodian, given the inability of the custodian to comply simultaneously with the request and with 28 C.F.R. § 16.22(a), if one deems the unchecked subpoena valid, then the custodian would be required to attend the deposition under the terms of the notice.  See Plaintiff's Exhibit 2.

-5-

obtain a subpoena *ad testificandum* against an employee of a federal agency that has enacted a Touhy regulation." Id. at 1212 n.4 (citations omitted).

> In Houston Business Journal, the Circuit clearly recognized that where an agency has enacted valid Touhy regulations, a federal court litigant may not obtain a subpoena *ad testificandum* against an employee of a federal agency, but "the litigant must proceed under the APA [Administrative Procedure Act] and the federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard." 86 F.3d at 1212 n. 4 (citing Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991); Davis Enters. v. EPA, 877 F.2d 1181, 1186 (3d Cir. 1989), cert. denied, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990)).

Ho v. United States, 374 F.Supp.2d 82, 83 (D.D.C. 2005) (footnotes omitted).

Thus, this Court is not free to substitute its judgment for that of the agency in ruling on the Touhy determination. Id.

> Under the applicable APA provision, a reviewing court must strike down an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. §§ 706(2)(A) (1996). Although the court must make a "thorough, probing, in-depth review," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the agency's decision must be upheld if it has "considered the relevant factors and articulated a rational connection between the facts found and the choice made." Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983); see also Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 521 (D.C. Cir. 1983). Furthermore, courts should defer to the agency's expertise on highly technical matters. Marsh v. Oregon Natural Resource Council, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); New York v. Reilly, 969 F.2d 1147, 1150- 51 (D.C. Cir. 1992).

<u>Southwest Center For Biological Diversity</u> v. <u>Norton</u>, Civil Action No. 98-934 (RMU/JMF), 2002 WL 1733618, *6 (D.D.C. July 29, 2002).

As reflected in the Letters to Plaintiff's Counsel dated July 18 and 21, 2006, the USAO clearly considered the relevant factors. A <u>Touhy</u> determination requires an analysis of the factors set forth in 28 C.F.R. § 16.26. Those regulations provide, in part:

(a) In deciding whether to make disclosures pursuant to a demand, <u>Department officials and attorneys should consider</u>:

(1) <u>Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose</u>, and

(2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

(b) <u>Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist</u>:

(1) <u>Disclosure would violate a statute</u>, such as the income tax laws, 26 U.S.C. 6103 and 7213, <u>or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e)</u>,

(2) Disclosure would violate a specific regulation;

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

(5) Disclosure would reveal investigatory records compiled for law enforcement

> purposes, and would interfere with
> enforcement proceedings or disclose
> investigative techniques and procedures the
> effectiveness of which would thereby be impaired,
>
> 6) Disclosure would improperly reveal trade
> secrets without the owner's consent.
>
>   (c) In all cases not involving considerations
> specified in paragraphs (b)(1) through (b)(6) of this
> section, the Deputy or Associate Attorney General will
> authorize disclosure unless, in that person's judgment,
> after considering paragraph (a) of this section,
> disclosure is unwarranted.  The Deputy or Associate
> Attorney General will not approve disclosure if the
> circumstances specified in paragraphs (b)(1) through
> (b)(3) of this section exist.

28 C.F.R. § 16.26 (emphasis added).

These are the very factors that were considered in responding to Plaintiff's request.  As reflected in the Letters and records of the agency, the Privacy Act acted as a bar to the release of the information sought.  See 28 C.F.R. § 16.26(b)(1).[4] The agency correctly noted in its initial response to Plaintiff:

> You have provided no written authorization for
> disclosure of the requested information and we are not
> aware of any applicable exception within the Privacy
> Act that would allow disclosure of the information you
> seek.  See 5 U.S.C. § 552a(b)(1)-(12).  Thus, it

---

[4]  The Superior Court Grand Jury secrecy Rule (SCR-Crim. 6(e)), would also prohibit the disclosure of certain of the information sought by Plaintiff.  See 28 C.F.R. § 16.26(b)(1); Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 584 (D.C. Cir. 1987).  Similarly, although Plaintiff has abandoned his request for documents through 28 C.F.R. §§ 16.21-16.29, the criminal case files contain significant attorney work product and deliberative information which is protected from disclosure.  See NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149 (1975); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980); July 18, 2006 Letter (Exhibit C) at 2-3.

appears that disclosure of the information requested at this time would be contrary to the Privacy Act and its associated regulations.

July 18, 2006 Letter (Exhibit C) at 2.

Plaintiff's uninformed claim that he "does not seek any information that would tend to violate Mr. Oesby's rights under the Privacy Act" (see Complaint, ¶ 26) is unfounded and wrong. See Complaint, ¶ 25; Declaration of Elisabeth Poteat ("Poteat Decl."), ¶¶ 2-3.  In the Complaint, Plaintiff concedes that the information he seeks is as follows:

> At deposition, Ms. Poteat will be asked questions concerning her personal knowledge concerning the plaintiff's wrongful incarceration.  Specifically, during plaintiff's incarceration, we are told by certain of the defendants that Ms. Poteat contacted Prince George's County authorities to suggest that a serial rapist who she was prosecuting in D.C. may have committed the crimes Mr. Longtin was accused of committing.  The Prince George's County Police Department (PGPD) ignored this information and information from some of its own investigations, all of which pointed to the actual perpetrator, Antonio Oesby, whom Ms. Poteat successfully prosecuted.

Complaint, ¶ 25.  Similarly, Plaintiff sought in his April 10, 2006 Touhy request: "A copy of the case file . . . in the case of United States of America v. Antonio Oesby."  See Plaintiff's Exhibit 2 at 3.  Similarly, Plaintiff sought "testimony related to the documents listed above," i.e. including the Oesby case file, and testimony regarding any communications with Prince George's County law enforcement authorities involving Longtin, Oesby and the murder of Donna Zinetti.  Id at 3-4.

The Court may take judicial notice that Assistant United
States Attorneys maintain prosecution files in their criminal
cases.  See 54 Fed. Reg. 42060, 42097, 1989 WL 293579 (F.R.)
(Oct. 13, 1989) (Department of Justice Privacy Act Systems of
Records Notice for U.S. Attorney, District of Columbia Superior
Court Operations, Criminal Files, JUSTICE/USA-013) ("categories
of individuals covered by the system: (a) Individuals charged
with violations; (b) Individuals being investigated for
violations; . . . (d) Information Sources; (e) Individuals
relevant to development of Criminal Cases; . . . (g) Individuals
referred to in potential or actual cases and matters of concern
to a U.S. Attorney's Office. . ."); 53 Fed. Reg. 1861, 1988 WL
275574 (F.R.) (Jan. 22, 1988) (Department of Justice Privacy Act
Systems of Records Notice for U.S. Attorneys' Offices, Criminal
Case Files, Justice/USA-007) ("categories of individuals covered
by the system: The individuals on whom records are maintained may
be broadly classified in three categories (1) Those individuals
who have been charged with criminal violations; (2) those
individuals who are currently under investigation for criminal
violations; and (3) those individuals upon whom criminal
investigations were conducted, but no prosecution was
initiated"); accord Poteat Decl., ¶¶ 2-3.

Mr. Longtin has filed an affidavit in which he avers that he
is competent to testify to the facts in his affidavit and that he

-10-

has personal knowledge that the allegations in the Complaint are
true.  <u>See</u> Affidavit of Keith Longtin, ¶¶ 1, 3.  In fact, Mr.
Longtin is neither competent to render the numerous legal
opinions set forth in the Complaint, nor can he have personal
knowledge of what may or may not be maintained in the systems of
records maintained by the Department of Justice.[5]  <u>See</u> Poteat
Decl., ¶¶ 2-3; Nebeker Decl., ¶ 7.  Thus, Plaintiff cannot know
whether disclosure of the information he seeks "would tend to
violate Mr. Oesby's rights under the Privacy Act."  Complaint, ¶
26; <u>see</u> <u>also</u> Complaint, ¶ 23 ("The information that the plaintiff
seeks from AUSA Poteat is not protected by the Privacy Act."); 5
U.S.C. § 552a(b) ("No agency shall disclose any record which is
contained in a system of records by any means of communication to
any person. . . [absent specific exceptions]"); <u>Bartel</u> v. <u>Federal</u>
<u>Aviation Admin.</u>, 725 F.2d 1403, 1408 (D.C. Cir. 1984); <u>see</u> <u>also</u>
<u>Chang</u> v. <u>Department of Navy</u>, 314 F.Supp.2d 35, 41 (D.D.C. 2004)
(release of records could constitute a Privacy Act violation even
if not themselves contained in a system of records if the
underlying records from which they were compiled were contained
within a system of records); <u>Wilborn</u> v. <u>Department of Health and</u>

--------------------------------------------------------------------

    [5]  Similarly, to the extent that Mr. Longtin's declaration
could be read to suggest that the July 18, 2006 Letter was <u>final</u>
agency action, his claim is inaccurate as a matter of law.  <u>See</u>
Complaint, ¶¶ 13, 18; Exhibits C, D and E; <u>Stone</u> v. <u>INS</u>, 514 U.S.
386, 392 (1995) (Under the APA, "filing of a motion to reconsider
renders the underlying order nonfinal for purposes of judicial
review.").

Human Services, 49 F.3d 597, 601 (9th Cir. 1995) (even though the plaintiff's former supervisor may not have physically retrieved the disclosed information from plaintiff's personnel file, he violated the Privacy Act).  Indeed, Plaintiff's own allegations lead to the inescapable conclusion that the testimony he anticipates would logically be contained in USAO criminal case files.  See Complaint, ¶ 25 ("we are told by certain of the defendants that Ms. Poteat contacted Prince George's County authorities to suggest that a serial rapist who she was prosecuting in D.C. may have committed the crimes Mr. Longtin was accused of committing.  The Prince George's County Police Department (PGPD) ignored this information and information from some of its own investigations, all of which pointed to the actual perpetrator, Antonio Oesby, whom Ms. Poteat successfully prosecuted.") (emphasis added); id., ¶¶ 32-33.

In addressing Plaintiff's argument that Ms. Poteat's testimony need not mention Mr. Oesby, the United States Attorney's Office did consider Mr. Longtin's uninformed claim that "plaintiff is not seeking information relating to Mr. Oesby but will only depose AUSA Poteat with respect to her communication with the Prince George's County Police Department and her knowledge of the plaintiff's unlawful incarceration." Complaint, ¶ 24.  See July 21, 2006 Letter to Paul R. Sciubba, Esq., at 2-4.  The July 21, 2006 letter explains:

Your July 19, 2006 supplement also suggests that Ms. Poteat's testimony may simply avoid any reference to the name of the individual whose records are maintained in our system of records, and thereby avoid any Privacy Act concerns.  This suggestion ignores two issues: 1) Privacy Act actions have proceeded even where the individual's true name was not released to the public.  See Lohrenz v. Donnelly 223 F.Supp.2d 25, 31 (D.D.C. 2002) ("In the Thurmond letter, plaintiff Lohrenz was not identified by name; she was referred to only as 'Pilot B' in a purported effort to protect her identity.  It was, however, well known that there were only two women carrier-qualified as F-14 pilots, so plaintiff's identity as 'Pilot B' was no mystery to other naval aviators, other officers and crew aboard the U.S.S. Abraham Lincoln, and any other individuals who were familiar with the naval aviation community."); Cummings v. Department of Navy, 116 F.Supp.2d 76, 78 (D.D.C. 2000) (Privacy Act claim premised on injury from publication of a book using an alias of "Sally Hopkins.")  We have conferred with Ms. Poteat in this matter and have concluded that under the circumstances of the case at issue, it is likely that any information which Ms. Poteat could provide would be readily traceable to a particular prosecution she handled in this office.  This is so particularly in the context of the documents you have sought in the litigation.  See Amended Notice Of Videotaped Deposition Duces Tecum, Documents To be Produced Nos. 1 and 4.  Indeed, a search of the worldwide web for the terms "Longtin" and "rape" through the search engine Google.com, promptly revealed the name of a man arrested by the District of Columbia police named Oesby.  See http://www.law.northwestern.edu/clinic/Articles/Allegat ions.htm.[6]

---

[6]  A copy of the article is attached as Exhibit F. Defendants ask that the Court take judicial notice of the document.  See Fed. R. Evid. 201; Grimes v. Navigant Consulting, Inc., 185 F. Supp. 2d 906, 913 (N.D. Ill.), vacated and remanded on other grounds, 536 U.S. 920 (2002) (taking judicial notice of historical stock prices from Yahoo!Finance) (citing Austin v. American Ass'n of Neurological Surgeons, 253 F.3d 967, 971 (7th Cir. 2001)); Cali v. East Coast Aviation Servs., Ltd., 178 F. Supp. 2d 276, 287 (E.D.N.Y. 2001) (taking judicial notice of Web-based corporate documents and documents from Pennsylvania state agencies and FAA); McLaughlin v. Volkswagen of Am., Inc., No. 00-

Moreover, your intent to stay clear of information implicated by the Privacy Act does not mean that the inquiries you intend to make are not, in fact inquiries into the very facts that are contained in our systems or records.  You insist that you seek to inquire:

> concerning [Ms. Poteat's] personal knowledge concerning the plaintiff's wrongful incarceration.  Specifically, during the plaintiff's incarceration, we are told by certain of the defendants that Ms. Poteat contacted Prince George's County authorities to suggest that a serial rapist who she was prosecuting in D.C. may have committed the crimes Mr. Longtin was accused of committing.

July 19, 2006 Letter at 2.  It is difficult to see how you could inquire into any communications that Ms. Poteat may have had with P.G. County to convince them that she was prosecuting the Maryland murderer for a D.C. rape, without Ms. Poteat disclosing information from our criminal case file on that defendant.  Moreover, the defense attorneys would likely be permitted to cross-examine Ms. Poteat, and however well-intentioned you may be in seeking to protect against disclosure of Privacy Act information, the defendants' attorneys may not be willing or able effectively to cross-examine the witness without asking questions the answers to which are located in the criminal case files of this office.

Thus, upon careful and further consideration of

---

3295, 2000 U.S. Dist. LEXIS 17505 at *10 n.3 (E.D. Pa. Dec. 6, 2000) (taking judicial notice of NHTSA website description of automobile recall); <u>Cairns</u> v. <u>Franklin Mint Co.</u>, 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000) (taking judicial notice of content on Warhol Museum's Web pages), <u>aff'd</u>, 292 F.3d 1139 (9th Cir. 2002); <u>In re AgriBiotech Secs. Lit.</u>, No. CV-S-990144, 2000 U.S. Dist. LEXIS 5643 (D. Nev. Mar. 6, 2000) (taking judicial notice of public SEC filings from SEC Website); <u>Modesto Irrigation Dist.</u> v. <u>Pacific Gas & Elec. Co.</u>, 61 F. Supp. 2d 1058, 1066 (N.D. Cal. 1999) (taking judicial notice of FERC documents available on Internet); <u>Myers Investigative & Sec. Servs.</u>, 47 Fed. Cl. 288, 297 (Fed. Cl. 2000) (taking judicial notice of documents from Social Security Administration Website).

> the factors set forth in the applicable regulations, we
> have concluded that production of the requested
> information should still be denied.

July 21, 2006 Letter to Paul R. Sciubba, Esq., at 2-4.

Defendants submit that the authorities and reasons set forth in

the agency's July 18 and 21, 2006 letters are sound and that

Plaintiff cannot establish that reliance on those authorities and

reasons was "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C.A. §§ 706(2)(A)

(quoted in Southwest Center For Biological Diversity v. Norton,

2002 WL 1733618, *6).

Plaintiff relies on the decision in Robinett v. State Farm

Mutual Automobile Co., 83 Fed. Appx. 638, 2003 WL 22966127 (5th

Cir. 2003).  In assessing this theory, Defendants acknowledged

the Robinett case, but concluded that the binding authority in

this jurisdiction was to the contrary:

> We are mindful of the existence of the decision in
> Robinett v. State Farm Mutual Automobile Co., 83 Fed.
> Appx. 638, 2003 WL 22966127 (5th Cir. 2003), and
> similar case law, but must be guided in the first
> instance by the binding precedent in this jurisdiction,
> i.e. Houston Business Journal.  See also Louisiana v.
> Sparks, 978 F.2d 226, 235 n.15 (D.C. Cir. 1992) ("The
> state trial court believed that 5 U.S.C. § 552a(b)(11)
> - which makes an exception to the Privacy Act's general
> proscription of disclosure of material protected under
> that Act if 'a court of competent jurisdiction' orders
> disclosure - was evidence of a sweeping waiver of
> sovereign immunity.  There is no indication that this
> exception to the Privacy Act's normal operation evinces
> congressional intent to broadly waive the sovereign
> immunity of agencies such as the Justice Department
> when ordered to comply with state court subpoenas.
> Rather, § 552a(b)(11) is simply an exception to the

operation of the Privacy Act. In any event, in the
instant case that exception is inoperative because in
the present procedural posture of the case, no
court-state or federal-possesses jurisdiction to
enforce a state court subpoena."). Moreover, analysis
in Robinett found it significant that the VA's reliance
on the state court order undercut any claim that the
disclosure was "intentional or willful." Robinett,
2003 WL 22966127 at *1. Thus, even in Robinett, the
Court's analysis left room for the conclusion that the
state court may not have been a court of competent
jurisdiction, but the error in releasing records
pursuant to the state court order was unintentional and
thus not actionable under 5 U.S.C. § 552a(g)(4).

July 21, 2006 Letter (Exhibit E) at 2.[7]

Plaintiff also suggests that an order resolving this civil
action in his favor would moot the case. See Complaint, ¶ 21
("if this court orders that the defendants permit AUSA Poteat to
testify at a deposition, this exception to the Privacy Act [5
U.S.C. § 552a(b)(11)] will apply and the defendants' argument
will be moot"). Plaintiff ignores the limitations of this
Court's role under both the APA and the Privacy Act. Rather than
simply substituting its judgment, this Court must analyze the
agency's action under the circumstances reflected in the record
as it existed before the agency when it acted. At that time,

---

[7] Plaintiff also claims that in the Robinett case, the
Court created an exception to the Privacy Act when disclosure was
deemed necessary to prevent fraud or injustice. See Complaint, ¶
35. The language in Robinett that Plaintiff emphasizes on this
point, however, relies on a routine use set forth in the
regulations of the Veterans Administration. See 38 C.F.R. §
1.511(c)(3)(ii). Plaintiff has identified no similar routine use
applicable to the criminal case files at issue in this action,
and Defendants are aware of none.

Plaintiff proffered no order from a "court of competent jurisdiction." See Plaintiff's Exhibits 2-3; July 19, 2006 Letter (Exhibit D).[8]  Moreover, the Privacy Act creates no cause of action whereby Plaintiff may seek a disclosure order from a federal district court under the circumstances presented here. Thus, reviewing as it must the record as it existed before the agency, this Court should affirm the agency's decision given Plaintiff's inability to establish that the agency acted arbitrarily or capriciously in considering the administrative record.

For the reasons set forth above, Plaintiff has failed to establish any likelihood of success on the merits of his claim.

II.  PLAINTIFF HAS NOT DEMONSTRATED THAT HE WILL SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT GRANTED.

In order to obtain interim injunctive relief, the plaintiff also has the burden of demonstrating that he will be "irreparably

---

[8]  In any event, Plaintiff's suggestion that discovery in this APA action would be appropriate is misplaced.  Where agency action has been challenged as arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, it is well settled that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1972); see also Community for Creative Non-Violence v. Lujan, 908 F.2d 992, 997-98 (D.C. Cir. 1990); Doraiswamy v. Secretary of Labor, 555 F.2d 832, 839-40 (D.C. Cir. 1976); Polcover v. Secretary of the Treasury, 477 F.2d 1223, 1231 (D.C. Cir.), cert. denied, 414 U.S. 1001 (1973) ("We recognize the limits imposed on our scope of review . . . which bind us to the agency record and preclude a de novo consideration of the evidence."); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 401, 419 (1970).

-17-

injured" in the absence of such relief.   The District of Columbia Circuit has explained the concept of irreparable injury as follows:

> First, the injury must be both certain and great; it must be actual and not theoretical . . . the party seeking injunctive relief must show that the injury complained of is of such <u>imminence</u> that there is a clear and present need for equitable relief to prevent irreparable harm.
>
> * * *
>
> Implicit in each of these principles is the further requirement that the movant substantiate the claim that irreparable injury is likely to occur. . . . Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will <u>in fact</u> occur.

<u>Wisconsin Gas Co.</u> v. <u>FERC</u>, 758 F.2d 669, 674 (D.C. Cir. 1985) (internal quotations and citations omitted, emphasis in original).   Thus, speculative suggestions do not satisfy plaintiff's burden.   And, if Plaintiff cannot provide concrete evidence that he will be <u>irreparably</u> harmed - *i.e.* he will be harmed in a manner that cannot be remedied later – then a preliminary injunction is simply not appropriate.

In this case, Plaintiff has failed to establish how he will be harmed in the absence of a temporary restraining order. Plaintiff suggests that he needs AUSA Poteat's testimony to show that the Prince George's County authorities wrongly imprisoned him.   Plaintiff concedes, however, that he already has that information:

-18-

The defendants falsely alleged that the plaintiff, Keith Longtin, confessed to the brutal rape and first degree murder of his own wife. In doing so, one of the defendants provided demonstrably false information (including attributing statements to the plaintiff which other officers who were present have since testified he did not make) to a District Court Commissioner in order to have the plaintiff falsely charged and imprisoned. The defendants made this false charge only after they subjected the plaintiff to *more than thirty-eight consecutive hours of unlawful interrogation, denying him sleep for all but 50 minutes.* During the interrogation, the plaintiff was denied his right to counsel and physically threatened. As a result of the false assertions of the defendants, the plaintiff was detained for more than 8 months. In fact, Mr. Longtin was not released until after another man, *who has since been convicted*, was arrested for the murder of the plaintiff's wife.

The plaintiff discovered for the first time during this litigation that during his pretrial detention, DNA tests confirmed on January 11, 2000 that he could not have committed the murder. *Yet, the defendants kept the plaintiff imprisoned for five additional months despite having irrefutable DNA proof of his innocence.*

During the plaintiff's incarceration, we are told by certain of the defendants that [AUSA Poteat] contacted Prince George's County authorities to suggest that a serial rapist who you were prosecuting in D.C. may have committed the crimes Mr. Longtin was accused of committing. The Prince George's County Police Department ignored this information and information from some of its own investigations, all of which pointed to the actual perpetrator, Antonio Oesby, whom [AUSA Poteat] successfully prosecuted. As a result, the plaintiff was needlessly jailed for over 8 months during which time he lost work, many possessions and missed the funeral of his wife.

April 10, 2006 Letter (Plaintiff's Exhibit 2) at 1-2.

It therefore seems quite apparent that Plaintiff already has the evidence needed in his litigation. He has therefore failed to establish irreparable injury. For this reason as well, his

-19-

request for a preliminary relief should be denied.

III. THE GRANT OF A PRELIMINARY INJUNCTION WOULD COMPROMISE
     PRIVACY RIGHTS PROTECTED BY STATUTE AND WOULD BE AGAINST THE
     PUBLIC INTEREST.

The third and fourth factors which bear on a claim for
preliminary injunctive relief, see Al-Fayed, 254 F.3d at 303,
also weigh against Plaintiff.  The relief he seeks would disclose
information that Congress has seen fit to afford the protections
of the Privacy Act.  Unfettered release of the information could
also violate the secrecy afforded to the Grand Jury process by
D.C. law.  See SCR-Crim. 6(e); In Re Sealed Case, 121 F.3d 729,
737 (D.C. Cir. 1997).  Moreover, were the Court to accept
Plaintiff's arguments and issue a District Court order requiring
compliance with a state court subpoena notwithstanding the state
court's lack of jurisdiction, then all the a plaintiff need do in
every case is follow Plaintiff's lead and create a separate
federal case surrounding every state court discovery dispute
involving federal information.  Neither the APA nor the Privacy
Act authorizes federal district courts to issue such an order
under the circumstances presented here.  Where, as here, the
applicable regulations call for an assessment of the state
court's rules of procedure governing the case or matter, see 28
C.F.R. § 16.26(a)(1), this Court should not ignore the fact that
the state court lacks jurisdiction over a federal respondent.
Failure to do so would spawn endless federal litigation to

enforce state powers that do not exist in the face of federal regulations and the Privacy Act.  Only strict adherence to the limitations of the APA and its limited review will strike the proper balance.

<u>CONCLUSION</u>

For the reasons set forth above, defendants respectfully request that Plaintiff's Motion For Temporary Restraining Order be denied, and that this action be dismissed.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Memorandum Of Points And Authorities In Opposition To Plaintiff's Motion For Temporary Restraining Order and a proposed order has been made through the Court's electronic transmission facilities on this 28th day of July, 2006.

W. MARK NEBEKER, DC Bar # 396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230